## Hunt, Insurance Commissioner, et al., Appellants, *v.* Yeadon Borough School District.

Argued January 26, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Maurice Stern,* Special Deputy Attorney General, with him *Alexander J. McCloskey, Jr.,* and *Charles J. Margiotti,* Attorney General, for appellants.

*Howard Kirk*, with him *Ralph L. Lindenmuth*, for appellee.

OPINION BY MR. JUSTICE LINN, March 21, 1938:

Plaintiffs appeal from a decree dismissing their bill on preliminary objections under Equity Rule 48. As sureties, with Lansdowne Bank and Trust Company[1] as principal, they[2] executed separate bonds to the defendant, the School District of the Borough of Yeadon, agreeing to indemnify the School District against loss on its deposits in the bank.

When the Secretary of Banking took possession December 18, 1931, the amount of the School District's deposit was $68,341.70. The three bonds given by the plaintiff sureties aggregated $38,000. The bank had assigned to the School District as collateral two mortgage bonds in the face amount of $10,000 each.[3]

On September 27, 1933, the receiver paid a dividend of 15% and on March 19, 1935, a dividend of 12%, making a total of $18,452.24 received by the School District from the receiver. The plaintiffs also aver that pursuant to the demand of the School District they paid to it the principal of each bond, a total of $38,000. They then aver that the School District has been paid the sum of $38,000 plus the dividends received by the receiver, $18,452.24, and that the two $10,000 mortgages received as collateral should be treated as payment, un-

---

[1] Since December 18, 1931, in charge of the Secretary of Banking under the Act approved June 15, 1923, P. L. 809, and amendments; superseded by the Act of May 15, 1933, P. L. 565, 71 PS section 733-1 et seq.

[2] One of them is represented on the record by the Insurance Commissioner as Ancillary Receiver.

[3] "In order", as the bill avers, "to better secure and protect the deposits of the School District of the Borough of Yeadon, and in accordance with law, the Lansdowne Bank and Trust Company delivered to the School District of the Borough of Yeadon, the following security [describing the mortgages and bonds]."

der the bankruptcy rule for distribution of insolvent estates (see *United Security Trust Co. Case*, 321 Pa. 276, 184 A. 106), with the result that a total of $76,-452.24 has been paid to the School District, or an overpayment of $8,110.54. They ask for an accounting from the School District and to be subrogated to its right against the receiver. For determining whether, on the theory of their bill, they are entitled to the relief asked, the Receiver must be in court to justify the dividends paid, to protect the rights of creditors generally, and in and to the two $10,000 mortgages held by the School District as collateral; if there were no other objections to the proceeding, it would be defective for want of parties. But there is a more serious defect.

The Act of 1923, with amendments, under which the Secretary took possession, provided for the filing of accounts and the adjudicating of claims. On that subject we said in *Cameron v. Carnegie Trust Co.*, 292 Pa. 114, at 117, 140 A. 768, "that the proper procedure on questions affecting a distribution of the funds collected by the secretary, is to present a claim when his account has been filed and is before the court, at which time all the distributees can be heard. . . ." The Act of 1923, as amended, has been superseded by the Department of Banking Code, approved May 15, 1933, P. L. 565, 71 PS section 733-1 et seq., materially amplifying the procedure and remedial provisions of the former act. Section 709 is in these terms: "Power of Court to Make and Enforce Orders.—The court in which the certificate of possession is filed shall sit as a court of equity. It shall have the power, upon petition of the secretary, to make and enforce any appropriate order to enable him, with the utmost dispatch, to discharge his duties in connection with the business and property of any institution of which he has taken possession, as receiver, pursuant to the provisions of this act.

"The court shall grant to the party against whom the order is sought the right to appear, within ten days

after notice is given, to show cause why the order should not be made. The court shall have the power, at the end of the ten-day period, ex parte if the other party does not appear to show cause, or upon the merits, if the party does appear, to issue the aforementioned order." Article X provides for proof of claims, accounting and distribution.

If the plaintiffs have any claims, the Act provides that they shall be presented when the receiver's account is filed.

The decrees are affirmed at appellants' costs.